## PAUL WESTPHAL v. POLY CHEMICAL LABORATORIES, Inc., et al.
### No. 4865.

District Court, D. New Jersey.
Sept. 14, 1936.

William P. Hurley, of Newark, N. J., for plaintiff.

Blecheisen, Whelan & Rothstein, and Jacob Blecheisen, all of New York City, for defendants.

FAKE, District Judge.

The issues here arise on a bill of complaint seeking injunctive relief for unfair competition and the violation of trademark rights. An accounting is also sought.

At the conclusion of the trial, the court dictated into the record the following findings of fact:

"In the year 1881, Paul Westphal entered into the business of the manufacture and sale of a product known as Westphal's Auxiliator, and from that time down to the present day it has been bottled, labeled and placed in a carton substantially, if not entirely, the same.

"The evidence discloses that large sums of money have been expended over the years in advertising and building up the good will of this product. It is not possible to state the exact sums of money which were spent in advertising, but the advertising was sufficient to make the product well known in this part of the United States, and the business prospered.

"In the year 1907 Paul Westphal died, and from 1907 until 1910 the executors of

his estate continued to operate the business, when a corporation was organized under the laws of the State of New York known as Paul Westphal, a corporation, which corporation is the plaintiff herein.

"The defendant, Poly Chemical Laboratories, Inc., entered into the business of manufacturing and selling hair tonics in the year 1922, and among their products they sold a Foaming Hair Tonic of substantially the same color as that of Paul Westphal.

"In the year 1923, William Hallet, who prior to that date had been engaged in the cigar business, entered into the manufacture and sale of hair tonic under the name of The Westphalia Company. His wife's parents were natives of Westphalia, in Germany, and he having become familiar with the use of the word 'Westphalia' in the family, conceived the idea of naming his company The Westphalia Company.

"Subsequently, in the year 1929, he took into his employ one Eric Westphal and issued to him six shares of the capital stock of The Westphalia Manufacturing Company, which was organized in 1928, and thereafter he added to the labels used on the proprietary articles manufactured the words 'Westphal-Westphalia Manufacturing Company, Ltd.' This company was never what might be termed a very great success. In the beginning the business was conducted from the home of William Hallet, and some time later the corporation established a business headquarters at 6–8 West 18th Street, New York City.

"During the time when Hallet was connected with this business, and in 1922, and thereafter until sometime in 1924, he was in the employ of the De Milo Company, which company was also engaged in the manufacture of proprietary articles such as the one with which we are concerned here, and the De Milo Company furnished Hallet with supplies or the necessary ingredients used by him in the business of The Westphalia Manufacturing Company, Ltd. Later he left the De Milo Company and went with one Thomas who was interested in the business of Paul Westphal Company, a partnership, in the year 1924. This Paul Westphal Company, the partnership, is not the plaintiff in this cause, but is a partnership founded by one Paul Westphal, a grandson of the original owner of Westphal's Auxiliator hair tonic business, and a competitor of plaintiff here.

"Hallet left that employment in the year 1925 or 1926 and devoted his time to the business of The Westphalia Manufacturing Company, Ltd., until April 1931, when The Westphalia Manufacturing Company, Ltd. permitted and licensed Franconia Products, Inc. to use the name Westphal and Westphalia, upon payment to the said The Westphalia Manufacturing Company, Ltd. of a royalty of one percent of gross sales.

"In August of 1931 Franconia Products, Inc., assigned all its right, title and interest of, in and to the aforesaid royalty agreement to Poly Chemical Laboratories, Inc., the defendant herein, at which time Hallet was taken into the employ of the defendant, Poly Chemical Laboratories, Inc.

"About a year later the Poly Chemical Laboratories, Inc. purchased all of the outstanding capital stock of The Westphalia Manufacturing Company, Ltd., excepting the six shares which were outstanding in the name of Eric Westphal. A diligent search has been made for the purpose of locating the aforesaid Eric Westphal, by both the plaintiff and the defendant herein, but he has not been found, so we have no testimony as to his present whereabouts.

"Mr. Hallet testified that Eric Westphal was associated with The Westphalia Manufacturing Company, Ltd. from 1929 to 1931, since which time he has neither seen him nor heard from him.

"On November 18, 1931, the plaintiff herein addressed a communication to the defendant, complaining of the use by defendant of the name 'Westphal' in connection with defendant's business. A few days thereafter the defendant replied maintaining its right to use the word 'Westphal' in the form and manner used. To this letter the Plaintiff replied, refusing to accept the defendant's explanation and threatening suit.

"On December 1, 1931, the defendant wrote as follows:

" 'Although still maintaining our right to the use of the name, however, in order to avoid any ill feeling we shall in the future strike out the word Westphal on the labels we have on hand and omit it from any new labels that we may print.

" 'We are enclosing labels showing the manner of our deletion.'

"Shortly thereafter the defendant put a paster over the word 'Westphal', leaving

only the words 'Westphalia Manufacturing Company, Ltd.'

"On January 31, 1933, almost a year later, the plaintiff wrote the defendant as follows:

"'Confirming our telephone conversation of this morning, will say that you entered into an agreement with us some time ago to the effect that you would discontinue the name Westphal from the label of your Westphalia preparations, and we have evidence to the effect that you have not done this and your statement that you knew that it should have been done but that the boy did not do it is not taken seriously by us. Therefore we will give you until Thursday morning, February 2nd, to have the label in our hands showing us in what way you have removed the name Westphal, together with an affidavit from you to the effect that you have discontinued the word Westphal from all labels.'

"Two days later the defendant wrote to the plaintiff as follows:

"'We are enclosing herewith a label of The Westphalia Manufacturing Co. showing the manner of deletion of the word Westphal, which we trust will meet with your approval.'

"The next day the plaintiff replied, indicating that the blocking out of the word 'Westphal' was insufficient. Apparently the plaintiff had discovered the Westphal-Westphalia label on a bottle of hair tonic in a drug store and assumed that the defendant had not blocked out the word 'Westphal' for the letter contains the following:

"'Your present action is but a repetition of your written promise of December 1st, in which you agreed to discontinue the word Westphal immediately, and in which you furnished us with a sample of the label with the word Westphal blocked out, but you did not live up to your written agreement.'

"At the trial the druggist who sold the bottle labeled 'Westphal-Westphalia' took the stand and testified that he had purchased it prior to December 1st, 1931, at a time, of course, prior to any attempted agreement between the parties.

"Between February 3, 1933, and February 21, 1933, the plaintiff and the defendant met and apparently came to an agreement, the purport of which was that the defendant would print a sticker containing the name 'Westphalia Manufacturing Company, Ltd.' and paste the same over the name 'Westphal-Westphalia Manufacturing Company, Ltd.', and also to print new labels as the old labels ran out. Negotiations on the subject were apparently, at that time, terminated by the following letter:

"'February 21, 1933.
"'Paul Westphal,
"'209 West 48th Street,
"'New York, N. Y.
"'Re: Westphalia Manufacturing Co.
"'Dear Sir:
"'In accordance with our conversation last Saturday, in which you stated that you had no objection to the use of the word Westphalia, but that you did object to the use of the word Westphal, we are enclosing herewith some sample labels and strips showing the manner of deletion of the word Westphal.
"'It is understood that we are doing this to maintain our friendly relations and that it is in no way to prejudice any rights that we may have in the matter.
"'Very truly yours,
"'Poly Chemical Laboratories, Inc.'

"The plaintiff did not reply to the foregoing letter, and about a year later the defendant received the following letter from plaintiff's attorney:

"'John M. A. Blair, Lawyer
"'505 Fifth Avenue
"'New York, New York.
"'Westphal vs. Westphal-Westphalia Manufacturing Company, Ltd.
"'February 7, 1934.
"'Westphal-Westphalia Manufacturing Co., Ltd.,
"'c/o Poly Chemical Laboratories,
"'38 Montgomery Street,
"'Jersey City, New Jersey.
"'Gentlemen: Attention: Louis Rothstein or Frank Haber

"'My client, Paul Westphal, a corporation, having its office and place of business at No. 209 West 48th Street, New York, New York, is the owner of the trade name and mark Westphal, registered March 30, 1926, under Act of February 20, 1905, as trademark No. 210,944, in Washington, D. C. Your use of the trademark Westphalia and of the tradename Westphal-Westphalia Manufacturing Company, Ltd., in the hair tonic business and barber supply business is a flagrant violation and a cunning infringement upon my client's right to the exclusive use of this trade name and mark, and must cease.

My client is disgusted with your broken promises to discontinue your illegal use of such trademark and name and will no longer tolerate your unfair competition. Unless you discontinue the use of said trade name and mark and pay my client damages for your past infringement of its trademark rights, my client will have to sue for an injunction and damages in the New Jersey Court of Chancery within ten days from this date. This is the last warning.

" 'Very truly yours,

" 'John M. A. Blair,

" 'Attorney for Paul Westphal.'

"After the receipt of the foregoing letter Mr. Haber of the Poly Chemical Laboratories, Inc. called upon Mr. Blair and furnished to Blair a set of defendant's labels as then being used, and Mr. Blair said he would advise with his client on the subject. The result of that conference was the institution of this suit.

"The foregoing letter is the first evidence we have of any objection made by plaintiff to the defendant's use of the word 'Westphalia.' The prior complaint related only to the use of the word 'Westphal.'

"The bottle in which the defendant sells its Westphalia Foaming Hair Tonic is not at all similar in shape to that of plaintiff's bottle. The plaintiff's bottle is sold in a carton with a lithographic reproduction of the bottle and label on the carton. The defendant's bottle is not sold in a carton, and its bottle is cylindrical in shape, while that of the plaintiff is flat on the front and back.

"The position taken by counsel on both sides in this case leads to the finding that the issue is confined to the question as to whether or not the defendant is justified in the use of the word 'Westphalia' in connection with the sale of hair tonic, as against plaintiff's contention that the use of the word 'Westphalia' by the defendant in the sale and manufacture of its hair tonic amounts to unfair competition or a colorable imitation of its trademark 'Westphal.'

"On March 30, 1926, plaintiff obtained registration of a trademark covering the use of the word 'Westphal'. On July 6, 1926, defendant's predecessor obtained registration of a trademark covering the use of the word 'Westphalia.'

"It is found as a fact that purchasers of Westphal's Auxiliator invariably call for Westphal's. The word 'Auxiliator' is seldom, if ever, used.

"The only direct evidence bearing upon the confusion in the public mind as between Westphal's and Westphalia is as follows:

"In January, 1932, Lookout Barber Supply Company of Chattanooga, Tennessee, addressed a letter to Westphal-Westphail Mfg. Co., 59 Hudson Street, N. Y., and it was delivered to Paul Westphal, the plaintiff, at 209 West 48th Street, New York. The communication was apparently intended for the Westphal-Westphalia Manufacturing Company, inasmuch as the order therein contained was for six gallons of Westphalia Foaming Tonic.

"In 1934 one M. Bress of Troy, New York, addressed a communication to Westphal-Westphalia Mfg. Co. at 688 West 18th Street, New York City, and this letter was likewise delivered to the plaintiff at 209 West 48th Street, New York City. The contents of the letter indicate a request for quotations of prices of defendant's and not plaintiff's hair tonic.

"We have an envelope postmarked 1933, addressed to Westphal Mfg. Co., 591 Hudson Street, New York City. This was also delivered to Paul Westphal, 209 West 48th Street, New York.

"In 1934 the Sisson Drug Company of Hartford, Connecticut, ordered one-twelfth of a dozen Westphalia Hair Restorer, and the order was addressed to Paul Westphal, 209 West 48th Street, New York City.

"Louis Westphal testified that on one occasion a customer called at plaintiff's place of business in New York and asked for a bottle of Westphalia. Mr. Westphal informed the customer that they did not make or sell Westphalia Hair Tonic.

"As opposed to the thought that there was any confusion in the public mind by virtue of which Westphalia Hair Tonic was confused with Westphal's Hair Tonic, seven witnesses, each of whom was a licensed druggist, testified, and very emphatically, that there was no confusion, either in their minds or in the mind of the public, whereby one of these products might be mistaken for the other, and one of the reasons advanced was that the Westphal product was sold in a different shaped bottle and also in a carton, and the Westphalia bottle differed in design from Westphal's bottle, and was not sold in a carton.

"The Court will take judicial notice of the preliminary injunction issued herein, and also of the rulings by this Court in

the preliminary injunction issued in the case of Pinaud, Inc., against Poly Chemical Laboratories, Inc., et al. (D.C.) 16 F. Supp. 414, and also of the consent decree in Semler & Co. v. Poly Chemical Laboratories, Inc.,[1] unless an examination of the law on the subject discloses that this Court cannot properly consider these factors."

To fully comprehend the conclusions I have arrived at, the foregoing findings of fact must be read in connection with the entire record. I am firmly convinced after deliberation on the facts that this defendant has been engaged in studied efforts to copy the appearances of the products of others for the purpose of misleading the public and thereby attempting to obtain an unjust enrichment. Defendant's conduct amounts to unfair competition as against the plaintiff here, since it has resulted in misleading the public as shown by the letters received by plaintiff coupled with the defendant's unfair conduct. The testimony of the druggists to the contrary is not sufficient to overcome this conclusion.

In the recent case of Pinaud, Incorporated, v. Poly Chemical Laboratories, Inc., this same defendant (D.C.) 16 F.Supp. 414 (opinion filed September 10, 1936), defendant was found guilty of unfair competition by me and also I find a consent decree against the defendant to the same effect in Semler & Co. v. Poly Chemical Laboratories, Inc. filed in this court May 31, 1934. All of which, coupled with the defendant's nicely laid scheme to obtain by purchase from a third party the right to use the word Westphal in competing with the plaintiff can lead to but one conclusion, and that is: This defendant is so constituted that for the protection of plaintiff as well as for the protection of the public, it must be kept at a very safe distance and well away from the use of names wherein good will and secondary meaning have accrued to others.

The word Westphal's has in my opinion acquired a secondary meaning as denoting the products of plaintiff, and plaintiff also has a right to the protection of its trademark. The use of the word Westphal by the defendant coupled with the word Westphalia, the phonetics of the two words, the nature of the product involved taken in connection with the defendant's conduct, places it in a position where it is not entitled to claim the full competitive rights which would inure to an innocent stranger.

Broderick & Bascom Rope Co. v. Manoff (C.C.A.) 41 F.(2d) 353.

To afford full protection it is necessary in this case to make the preliminary decree permanent and also to enjoin defendant from the use of the word Westphalia in conformity with the prayer of the complaint.

A decree will be entered in conformity with the views above expressed.

---

[1] No opinion for publication.